UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDWARD V. WYNN,

        Petitioner,

                              Case No. 17-10204

v.

                              Honorable Sean F. Cox

SHERMAN CAMPBELL,

        Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL

This matter has come before the Court on petitioner Edward V. Wynn's *pro se* petition for the writ of habeas corpus under 28 U.S.C. § 2254. The habeas petition challenges Petitioner's convictions for one count of criminal sexual conduct in the first degree, Mich. Comp. Laws § 750.520b(1)(c), and one count of unlawful imprisonment, Mich. Comp. Laws § 750.349b(1)(c).

Petitioner argues as grounds for relief that certain evidence was improperly admitted at his trial, that there was insufficient evidence at trial to support his convictions, that the prosecutor withheld evidence, and that his trial and appellate attorneys were ineffective. Respondent Sherman Campbell argues in an answer to the petition that Petitioner's claim about his trial attorney is procedurally defaulted and that Petitioner's other claims are not cognizable on habeas review or they were reasonably decided by the state court. Petitioner argues in a reply brief that the state courts' rulings were unreasonable and that "Respondent got it wrong" in his answer to the petition.

The Court agrees with the State that Petitioner's claims do not warrant habeas corpus relief.  Accordingly, the Court is denying the petition for a writ of habeas corpus.

## I. Background

The charges against Petitioner arose from an incident that occurred in Flint, Michigan on April 28, 2009.  The state court briefly summarized the facts as follows:

> Defendant and the victim were involved in a romantic relationship over a number of years.  The relationship was volatile and at one point the victim had a personal protection order against defendant.  On the night of the assault, the victim and a friend were at a bar when they encountered defendant.  All three had been drinking and smoking marijuana.  Although the victim asked defendant to leave them alone, he refused and got into the victim's car with them when they attempted to leave.  At one point, the victim and her friend both jumped out of the car and began to run. Defendant caught the victim, dragged her back to the vehicle, drove her to his apartment complex, dragged her to his apartment, and sexually assaulted her.

*People v. Wynn*, No. 297373, 2011 WL 4467678, at *1 (Mich. Ct. App. Sept. 27, 2011) (unpublished).

Petitioner was tried before a jury in Genesee County Circuit Court.  He testified that the complainant consented to the sexual encounter, and his attorney argued to the jury that the prosecution had failed to prove its case.  The trial court instructed the jury on third-degree criminal sexual conduct as a lesser offense of first-degree criminal sexual conduct, but on January 22, 2010, the jury found Petitioner guilty, as charged, of first-degree criminal sexual conduct and unlawful imprisonment.[1]  On March 10, 2010, the trial

---

[1] The jury's verdict was not transcribed, *see* 1/22/10 Trial Tr. at 5, ECF No. 9-16, PageID. 1003, but the judgment of sentence states that Petitioner was convicted of first-degree criminal sexual conduct and unlawful imprisonment, and the parties to this action are not disputing the actual verdict.

court sentenced Petitioner as a fourth habitual offender to two concurrent terms of twenty to forty years in prison with credit for 208 days already served.

Petitioner appealed his convictions on grounds that: (1) the trial court abused its discretion and deprived him of his right to due process when it permitted the prosecutor to introduce evidence of Petitioner's medications; (2) the trial court erred reversibly and violated his right to due process by allowing the prosecutor to admit evidence of Petitioner's prior criminal conduct; and (3) there was insufficient evidence of an element in both crimes. These arguments form the basis for Petitioner's first three habeas claims.

Petitioner moved to postpone oral argument in his appellate case or to supplement his appellate brief with new information that the complainant was arrested four days before the incident that led to the charges against Petitioner. The Michigan Court of Appeals, however, denied Petitioner's motion to file a supplemental brief and affirmed Petitioner's convictions in an unpublished, *per curiam* opinion. *See People v. Wynn*, No. 297373 (Mich. Ct. App. Sept. 8, 2011, and Sept. 27, 2011) (unpublished). On September 4, 2012, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues. *See People v. Wynn*, 492 Mich. 864; 819 N.W.2d 880 (2012).[2]

In 2013, Petitioner filed a motion for relief from judgment in the state trial court. He argued that his trial and appellate attorneys were ineffective. The trial court denied Petitioner's post-conviction motion because the claims lacked merit and because Petitioner had failed to show "cause" for his failure to raise his arguments on direct appeal.

---

[2] Justice Michael F. Cavanagh voted to grant leave to appeal.

*See People v. Wynn*, No. 09-24999-FC (Genesee Cty. Cir. Ct. Dec. 30, 2015), ECF No. 9-21.

Petitioner appealed the trial court's decision on grounds that: (1) the prosecutor withheld material impeachment evidence from him and allowed false testimony to go uncorrected at trial; (2) his trial attorney failed to investigate, obtain information, and call exculpatory defense witnesses; and (3) his appellate attorney was ineffective for failing to raise obvious and significant issues on direct appeal. These arguments comprise Petitioner's fourth, fifth, and sixth habeas claims.

The Michigan Court of Appeals denied leave to appeal because Petitioner had failed to establish that the trial court erred in denying his post-conviction motion. *See People v. Wynn*, No. 331918 (Mich. Ct. App. July 25, 2016) (unpublished). On January 5, 2017, the Michigan Supreme Court denied leave to appeal because Petitioner failed to establish entitlement to relief under Michigan Court Rule 6.508(D). *See People v. Wynn,* 500 Mich. 925; 888 N.W.2d 99 (2017).

On January 16, 2017, Petitioner signed and dated his habeas corpus petition, and on January 20, 2017, the Clerk of Court filed the petition. *See* ECF No. 1. Respondent initially moved to dismiss the petition on the basis that Petitioner did not comply with the one-year statute of limitations. *See* ECF No. 5. The Court denied Respondent's motion, ECF No. 7, and on April 11, 2018, Respondent filed an answer to the habeas petition, ECF No. 8. Petitioner filed a reply brief, ECF No. 10, and the case is now ready to be adjudicated.

## II. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires prisoners who challenge "a matter 'adjudicated on the merits in State court' to show that the relevant state court 'decision' (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Wilson v. Sellers*, 138 S. Ct. 1188, 1191 (2018) (quoting 28 U.S.C. § 2254(d)). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 411 (2000). "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S. Ct. 2059, 138 L.Ed.2d 481 (1997), and 'demands that state-court decisions be given the benefit of the doubt,' *Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S. Ct. 357, 154 L.Ed. 2d 279 (2002) (*per curiam*)." *Renico v. Lett*, 559 U.S. 766, 773 (2010).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. Thus, "[o]nly

an 'objectively unreasonable' mistake, [*White v. Woodall*, 572 U.S. 415, 419 (2014)], one 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement,' slips through the needle's eye of § 2254." *Saulsberry v. Lee*, 937 F.3d 644, 648 (6th Cir. 2019) (quoting *Richter*, 562 U.S. at 103), *cert. denied*, __S. Ct.__, No. 19-419, 2019 WL 5301304 (U.S. Oct. 21, 2019). A state-court's factual determinations, moreover, are presumed correct on federal habeas review, 28 U.S.C. § 2254(e)(1), and review is "limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

### III. Analysis

#### A. Evidence of Petitioner's Prescription Medications

Petitioner alleges first that the trial court abused its discretion and deprived him of due process when it permitted the prosecutor to introduce evidence of Petitioner's prescription medications and Petitioner's failure to take most of the medications. Petitioner contends that the evidence was not relevant to the charges because there was no testimony regarding any connection between the medications and his perceptions on the night of the crimes.

Petitioner also contends that the evidence was prejudicial because one of the medications (Methadone) is commonly known as a treatment for an addiction to heroin, and some of the other medications treat mental illness. Petitioner concludes that evidence of his medications painted him as unstable, mentally ill, and a recovering drug addict. Petitioner also contends that the jury could have assumed he was unpredictable and violent when he did not take his medications.

The Michigan Court of Appeals agreed with Petitioner that evidence of his medications was irrelevant and that the trial court abused its discretion by admitting the evidence. The Court of Appeals, nevertheless, concluded that the error was harmless because it was unlikely that the jury gave any weight to the evidence.

1.  Clearly Established Federal Law

Errors in the application of state law, especially rulings on the admission or exclusion of evidence, usually are not questioned in a federal habeas corpus proceeding. *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988). "[S]tate courts are the ultimate expositors of state law," and federal courts generally are bound by their constructions of state law. *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). Moreover, "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

"[S]tates have wide latitude with regard to evidentiary matters under the Due Process Clause," and generally, state-court evidentiary rulings do not rise to the level of a due process violation unless the rulings offend some fundamental principle of justice. *Wilson v. Sheldon*, 874 F.3d 470, 475-76 (6th Cir. 2017). Therefore, to prevail on his claim, Petitioner must show that the error rendered his trial "so fundamentally unfair as to deprive [him] of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (citing *McGuire*, 502 U.S. at 69-70).

Furthermore, on habeas review, an error is harmless unless it had a "substantial and injurious effect or influence" on the jury's verdict. *Brecht v. Abrahamson,* 507 U.S.

619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).  As recently explained by the Sixth Circuit Court of Appeals,

> the federal court will not grant habeas relief unless the state error "resulted in 'actual prejudice.' "  [*Davis v. Ayala*, 135 S. Ct. 2187, 2197 (2015)] (quoting *Brecht*, 507 U.S. at 637, 113 S.Ct. 1710).  This means that in order to grant habeas relief, the court must have at least "grave doubt about whether a trial error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict.' "  *O'Neal v. McAninch*, 513 U.S. 432, 436, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995) (quoting *Brecht*, 507 U.S. at 627, 113 S.Ct. 1710).  "[G]rave doubt" about whether the error was harmless means that "the matter is so evenly balanced that [the court] feels [it]self in virtual equipoise as to the harmlessness of the error."  *Id.* at 435, 115 S.Ct. 992.

*O'Neal v. Balcarcel*, 933 F.3d 618, 624 (6th Cir. 2019) (first alteration added, second and third alterations in original).  Furthermore, "[s]tate courts' harmless-error determinations are adjudications on the merits, and therefore federal courts may grant habeas relief only where those determinations are objectively unreasonable."  *Id.* (citing *Ayala*, 135 S. Ct. at 2198-99).

### 2. Application

Testimony about Petitioner's medications occurred a few times at trial.  First, Sergeant Norman Hoydic testified that Petitioner asked for his medication at the time of his arrest.  Sergeant Hoydic explained that, in response to Petitioner's request, he collected numerous medications and put them with Petitioner's personal property at the police station.  *See* 1/8/10 Trial Tr. at 143-146, ECF No. 9-10, PageID. 711.

An identification technician for the Flint Police Department later testified that she found a prescription for two medications in the trunk of Petitioner's truck.  The prescriptions had Petitioner's name on them.  *See* 1/13/10 Trial Tr. at 200-201, ECF No.

9-12, PageID 836. Sergeant Jeff Fray also mentioned the prescription found in Petitioner's truck. *See* 1/14/10 Trial Tr. at 8, ECF No. 9-13, PageID. 868.

Later, in the jury's absence, the prosecutor informed the trial court that he intended to ask Petitioner about the medications he was taking. The prosecutor stated that the medications were relevant to Petitioner's ability to perceive what was happening on the night in question. When defense counsel stated that he had no idea whether Petitioner was knowledgeable about the effects of the medication and what the medication was supposed to accomplish, the trial court said, "We'll see. It sounds like the door's been opened, so [the prosecutor] can go there." 1/20/10 Trial Tr. at 88, ECF No. 9-14, PageID. 924.

The prosecutor subsequently asked Petitioner on cross-examination whether he had asked Sergeant Hoydic at his arrest to bring his medication to the police station. When Petitioner answered, "Yes," the prosecutor asked Petitioner whether he was taking a medication for cholesterol, another medication called Gabapentin, and an antidepressant called Amitriptyline. Petitioner responded that the only medication he was taking at the time of the incident was Methadone and that he was taking Methadone for chronic pain in his arm. He explained that he had a lot of other pills in the house, including Triavil, which was used to treat depression, but he took Triavil only one time because he did not like the way it made him feel. He repeated that he did not take any of the other medications and that the only one he was taking at the time was Methadone. *Id.* at 44-46, PageID. 927.

During a bench conference, defense counsel objected to the prosecutor's questions on the basis that the prosecutor was testifying when he indicated what the

medications were intended to treat. The trial court, however, overruled the objection, and the prosecutor was permitted to resume questioning Petitioner about his medications, which included antibiotics, Penicillin, a cholesterol medicine, and prescriptions for Triavil and Restoril. Petitioner explained that Triavil was used for depression and that Restoril was a sleeping pill, but that he was not taking those medications at the time; he was only taking Methadone. *Id.* at 46-48, Page ID. 927-28.

The final reference to the medications occurred during the prosecutor's closing argument. He stated that Sergeant Fray had asked Officer Hoydic to collect Petitioner's medications and bring them to Petitioner and that Officer Hoydic had records of the medications. *Id.* at 161, PageID. 956.

The prosecutor's mention of the medications during closing arguments was brief. Most of the testimony about the medications also was brief. Although Petitioner's testimony on the topic was more extensive, he was adept at handling the prosecutor's questions. He provided explanations for his use of Methadone and his failure to take the other medications. Testimony about the medications did not necessarily lead to the conclusion that Petitioner was unstable, mentally ill, a recovering addict, or violent when not taking medication.

The Court concludes that testimony about Petitioner's medications was harmless because the evidence could not have had a substantial and injurious effect or influence on the jury's verdict. Additionally, the state appellate court's conclusion – that the evidentiary error was harmless because it was unlikely that the jury gave any weight to the evidence when deciding the critical facts – was objectively reasonable. Petitioner is not entitled to relief on his claim.

B. Evidence of Petitioner's Prior Criminal Conduct

Petitioner alleges next that the trial court erred reversibly and violated his right to due process by admitting evidence of his prior criminal conduct. The evidence included testimony that Petitioner: harassed, followed, and stalked the complainant (1/6/10 Trial Tr. at 130-31, ECF No. 9-8, PageID. 586-87; 1/7/10 Trial Tr. at 150, 155, ECF No. 9-9, PageID. 641, 643; 1/12/10 Trial Tr. at 119, ECF No. 9-11, PageID. 759); broke into the complainant's home and sometimes stole things from her (1/7/10 Trial Tr. at 92-102, ECF No. 9-9, PageID. 627-629); drove by the complainant's home, yelled threats, and gestured as though he had a weapon (1/8/10 Trial Tr. at 79, 125-126, ECF No. 9-10, PageID. 695, 706); stole the complainant's car (1/7/10 Trial Tr. at 25, 35, ECF No. 9-9, PageID. 610, 613); attacked or beat the complainant on a previous occasion and chased her and her child in a car on another occasion (1/7/10 Trial Tr. at 49, ECF No. 9-9, PageID. 616; 1/8/10 Trial Tr. at 61, 63, 72-74, 115-18, ECF No. 9-10, PageID. 690-691, 693, 704); cut the telephone cables at the home of the complainant's sister and stole her sister's car tires (1/8/10 Trial Tr. at 76, 119-124, ECF No. 9-10, PageID. 694, 705-706); stole medication prescribed for the complainant's child (1/7/10 Trial Tr. at 89-92, 100-101, ECF No. 9-9, PageID. 626-627, 629); sexually assaulted the complainant on a prior occasion (1/7/10 Trial Tr. at 83, 129-30, ECF No. 9-9, PageID. 625, 636); and assaulted the complainant after a wedding (1/8/10 Trial Tr. at 48-50, ECF No. 9-10, PageID. 687). There was additional evidence that the complainant acquired personal protection orders against Petitioner, although the orders may not have been in effect when Petitioner committed the crimes for which he was on trial. *See* 1/7/10 Trial Tr. at 146-48, ECF No.

9-9, PageID. 640-41; 1/8/10 Trial. Tr. at 14, 52-53, ECF No. 9-10, PageID. 678, 688; and 1/14/10 Trial Tr. at 5, ECF No. 9-13, PageID. 867.

Petitioner contends that this evidence should have been excluded due to the sheer volume of the testimony and because the prior episodes of stalking and violence had little or no connection to the charged crimes. Petitioner also contends that unfair prejudice outweighed any probative value of the evidence.

The Michigan Court of Appeals adjudicated Petitioner's claim on the merits and held that the trial court did not abuse its discretion when it allowed the prosecutor to admit the disputed evidence. The Court of Appeals stated that admitting evidence of Petitioner's prior bad acts was proper because the evidence was relevant evidence and any prejudicial effect did not substantially outweigh the probative value of the evidence.

### 1. Clearly Established Federal Law

As noted above in the discussion on Petitioner's first claim, errors in the application of state law, especially rulings in the admission or exclusion of evidence, usually are not questioned in a federal habeas corpus proceeding. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Cooper*, 837 F.2d at 286). Further, to the extent Petitioner is asserting that the "other acts" evidence was improper propensity evidence, his claim lacks merit because "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). Consequently, "there is no Supreme Court precedent that the trial court's decision could be deemed 'contrary to' under AEDPA," *id.* at 513, and Petitioner's claim is not cognizable on habeas corpus review.

2. Application

Even if Petitioner's claim were cognizable here, it was not fundamentally unfair to admit the disputed evidence. State law permits courts to admit evidence of other acts of domestic violence or sexual assault for any relevant purpose, including "to show a defendant's character or propensity to commit the same act." *People v. Railer*, 288 Mich. App. 213, 219–20, 792 N.W.2d 776, 780 (2010) (interpreting Mich. Comp. Laws § 768.27b and citing *People v. Schultz*, 278 Mich. App. 776, 778, 754 N.W.2d 925 (2008)).

The disputed evidence in Petitioner's case was relevant and probative. It showed why the complainant was afraid of Petitioner, and it explained some of her actions on the night of the crimes. She stated that she returned to Petitioner's truck after going in a store because Petitioner would have come after her if she had stayed in the store, and the situation would have been worse. *See* 1/7/10 Trial Tr. at 69, ECF No. 9-9, PageID. 621; *id.* at 137-139, PageID. 638-639. Additionally, as the Court of Appeals pointed out, the evidence tended to make the existence of Petitioner's assault on the victim more probable. The evidence also was useful in establishing the victim's credibility and negating Petitioner's claim that the victim consented to the sexual encounter.

Besides being relevant and probative, the "other acts" evidence was not unfairly prejudicial. The Court of Appeals noted that the evidence did not include gruesome details, it was not inflammatory, and it did not interfere with the jury's ability to logically weigh the evidence. The Court of Appeals also pointed out that the trial court had instructed the jurors on the proper use of the evidence. *See* 1/21/10 Trial Tr. at 21-22, ECF No. 9-15, PageID. 991.

The Court concludes that it was not fundamentally unfair to admit evidence of Petitioner's prior conduct toward the complainant and her family. Therefore, Petitioner's right to due process was not violated by admitting the evidence, and he has no right to habeas relief on his claim.

C. Legal Impossibility and Sufficiency of the Evidence

In his third claim, Petitioner alleges that the evidence at trial was insufficient because it was legally impossible to commit the charged crimes, as each crime served as an element or condition precedent for the other crime. Stated differently, Petitioner argues that it was impossible to commit either offense, because unlawful imprisonment required a showing that he restrained the victim to facilitate criminal sexual conduct, and first-degree criminal sexual conduct required proof that he committed another felony, namely, unlawful imprisonment.

Petitioner's argument that it was legally impossible to commit both offenses is based on state law, and the Michigan Court of Appeals found no merit in the argument. The Court of Appeals agreed with Petitioner that the prosecution had to prove all the elements of unlawful imprisonment to find Petitioner guilty of first-degree criminal conduct predicated on the unlawful imprisonment. But the Court of Appeals stated that the prosecution did not have to prove all the elements of criminal sexual conduct to prove unlawful imprisonment, because the unlawful-imprisonment statute does not require proof that the underlying felony was actually committed.

The state court's interpretation of state law binds this Court sitting in habeas corpus. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). Thus, the only cognizable claim

here is Petitioner's constitutional argument that there was insufficient evidence at trial to support his convictions. The Michigan Court of Appeals held that there was.

### 1. Clearly Established Federal Law

The critical inquiry on review of a challenge to the sufficiency of the evidence supporting a criminal conviction is

> whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (internal citations and footnote omitted) (emphases in original). "Circumstantial evidence may support a conviction, *McKenzie v. Smith,* 326 F.3d 721, 727 (6th Cir. 2003), and such evidence need not remove every reasonable hypothesis except that of guilt. *Walker v. Russell,* 57 F.3d 472, 475 (6th Cir. 1995)." *Apanovitch v. Houk*, 466 F.3d 460, 488 (6th Cir. 2006).

Under AEDPA, moreover, a habeas court's "review of a state-court conviction for sufficiency of the evidence is very limited," *Thomas v. Stephenson*, 898 F.3d 693, 698 (6th Cir. 2018), because *Jackson* claims are "subject to two layers of judicial deference." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (*per curiam*). First, it is the responsibility of the jury to decide what conclusions should be drawn from the evidence admitted at trial. *Johnson*, 566 U.S. at 651 (quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (*per curiam*)). "And second, on habeas review, 'a federal court may not overturn a state court

decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.' " *Id.* (quoting *Smith*, 565 U.S. at 2); *see also Tanner v. Yukins*, 867 F.3d 661, 672 (6th Cir. 2017) (stating that "two layers of deference apply [to a sufficiency-of-the-evidence claim], one to the jury verdict, and one to the state appellate court"), *cert. denied*, 138 S. Ct. 1283 (2018).

### 2. Unlawful Imprisonment

Petitioner challenges the sufficiency of the evidence supporting his conviction for unlawful imprisonment. As charged in his case, the prosecution had to prove that Petitioner "knowingly restrain[ed] another person" and "[t]he person was restrained to facilitate the commission of another felony . . . ." Mich. Comp. Laws § 750.349b(c).

> The term "restrain" is defined within the statute as "to forcibly restrict a person's movements or to forcibly confine the person so as to interfere with that person's liberty without that person's consent or without lawful authority." MCL 750.349b(3)(a). Restraint need not occur "for any particular length of time." MCL 750.349b(3)(a); see also *People v. Railer*, 288 Mich. App. 213, 218–219, 792 N.W.2d 776 (2010).

*People v. Bosca*, 310 Mich. App. 1, 18–19; 871 N.W.2d 307, 324 (2015), appeal held in abeyance by *People v. Bosca*, 872 N.W.2d 492 (Mich. 2018), and application for leave to appeal held in abeyance by *People v. Bosca*, 911 N.W.2d 465 (Mich. 2018).

According to Petitioner, there was insufficient that he knowingly restrained the complainant to facilitate the commission of another felony. The Michigan Court of Appeals, however, accurately pointed out that --

> [t]he victim testified that defendant grabbed her and dragged her towards her vehicle. She asserted that he forced her into the front passenger seat, and he drove the vehicle. The victim attempted to escape, but defendant tightly held onto her arm preventing her from escaping the moving vehicle. Later that night, defendant drove the victim to his apartment. The victim

testified that he pulled her out of the vehicle and dragged her inside his apartment building, up three flights of stairs, and into his apartment. The victim yelled and asked defendant to let her go. The victim testified that defendant told her to shut up and covered her mouth to prevent her from yelling. Defendant then closed and locked the apartment door.

*Wynn*, 2011 WL 4467678, at *6.

The Court of Appeals concluded that "this evidence, when viewed in the light most favorable to the prosecution, was sufficient to allow the jury to find that the victim's movements were forcibly restricted and she was held against her will, which interfered with her freedom of movement." *Id.* The Court of Appeals also opined that the evidence was

sufficient for a reasonable jury to infer that defendant restrained the victim to facilitate the commission of the separate felony, i.e., criminal sexual conduct. That is, if a victim's movements are restricted or a victim is confined, a sexual assault is made easier or less difficult to perpetrate. There can be less concern that the victim would escape or that a third party would interfere or impede the assault. Thus, a jury can infer that by restraining a victim, there are fewer factors that may hinder a perpetrator's act, thereby facilitating the commission of the sexual assault.

*Id.*

Given the victim's testimony that Petitioner sexually assaulted her in the apartment, the Court of Appeals stated that it was reasonable for the jury to infer that Petitioner restrained the victim to facilitate the criminal sexual conduct. The Court of Appeals concluded that there was sufficient evidence to convict Petitioner of unlawful imprisonment.

Although Petitioner's defense was that the complainant lied and was not credible, "[a]ttacks on witness credibility . . . 'are simpl[y] challenges to the quality of the government's evidence and not the sufficiency of the evidence.' " *United States v. Taylor*, 800 F.3d 701, 712 (6th Cir. 2015) (quoting *United States v. Gibbs,* 182 F.3d 408, 424 (6th

Cir.1999)) (alterations added). An assessment of a witness's credibility generally is "beyond the scope of federal habeas review of sufficiency of evidence claims." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Gall v. Parker*, 231 F.3d 265, 286 (6th Cir. 2000)). "It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony." *Id.* (citing *Neal v. Morris,* 972 F.2d 675, 679 (6th Cir. 1992)).

In this case, moreover, the complainant's testimony was corroborated in part by testimony from her sister, her friend Leslie Logan, police officers, and a gas station attendant. The jury could have inferred from their combined testimony that Petitioner unlawfully imprisoned the complainant by forcibly restraining her at his apartment so that he could sexually penetrate her.

When viewed in the light most favorable to the prosecution, the evidence was sufficient to convict Petitioner of unlawful imprisonment, and the state appellate court's similar conclusion was objectively reasonable. Therefore, habeas relief is not warranted on Petitioner's challenge to his conviction for unlawful imprisonment.

3. Criminal Sexual Conduct

In his challenge to the criminal-sexual-conduct conviction, Petitioner alleges that there was insufficient evidence that he sexually penetrated the complainant during the commission of another felony. Petitioner was charged with violating Mich. Comp. Laws § 750.520b(1)(c), which reads:

> (1) A person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person and if . . .
>
> > (c) Sexual penetration occurs under circumstances involving the commission of any other felony.

"[T]he plain language of the statute requires the prosecutor to prove (1) that a sexual penetration occurred and (2) that it occurred during the commission of another felony." *People v. Waltonen*, 272 Mich. App. 678, 686; 728 N.W.2d 881, 886 (2006) (citing *People v. Wilkens*, 267 Mich. App. 728, 736–737; 705 N.W.2d 728 (2005)). "[R]egardless of whether the penetration was consensual, if it occurs during the commission of another felony, the elements of MCL 750.520b(1)(c) are satisfied." *Wilkens*, 267 Mich. App. at 737; 705 N.W.2d at 735-736.

Both Petitioner and the complainant testified that sexual penetration occurred, and the scientific testimony confirmed that Petitioner penetrated the complainant. Furthermore, as discussed in the previous section, there was evidence that Petitioner unlawfully imprisoned the complainant before sexually penetrating her. Thus, there was sufficient evidence of first-degree criminal sexual conduct, as the testimony established both sexual penetration and the commission of another felony. The state appellate court's conclusion – that the evidence was sufficient – was objectively reasonable, and Petitioner has no right to relief on the basis of his challenge to his conviction for first-degree criminal sexual conduct.

D. Withholding Evidence

Petitioner's fourth claim alleges that the prosecution withheld impeachment evidence from him and allowed false testimony to stand uncorrected. Petitioner has not identified any false testimony that went uncorrected, but he asserts that the complainant's arrest for breaking the rear window of a car occupied by her two sisters and another woman was impeachment evidence. That incident occurred four days before the alleged false imprisonment and criminal sexual conduct for which Petitioner was on trial.

Petitioner contends that he could have used evidence of the complainant's arrest to show that the complainant was lying about him to obtain leniency in her own case and to appease her sisters who hated him. He maintains that he would have been acquitted of the charges if the prosecution had disclosed evidence of the complainant's arrest.

Petitioner first raised this claim in his motion for relief from judgment. The trial court found no merit in the claim and determined that Petitioner had failed to show "cause" under Michigan Court Rule 6.508(D)(3) for not raising the claim on direct appeal. The state trial court's reliance on Rule 6.508(D)(3) normally would trigger a procedural-default analysis. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991) (stating that, "[i]n all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice"). The Supreme Court, however, has stated that the suppression of evidence can itself be cause for not raising a claim earlier. *See Strickler v. Greene*, 527 U.S. 263, 289 (1999). Accordingly, the Court proceeds to address Petitioner's claim on the merits.

### 1. Clearly Established Federal Law

The clearly established federal law here is the Supreme Court's decision in *Brady v. Maryland*, 373 U.S. 83 (1963). The Supreme Court held in *Brady* that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87.

> *Brady* violations involve a three-part test:  "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued. "

*United States v. Castano*, 906 F.3d 458, 466 (6th Cir. 2018) (quoting *Strickler*, 527 U.S. at 281-82.

"[E]vidence is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.' "

*Strickler*, 527 U.S. at 280 (quoting *United States v. Bagley*, 473 U.S. 667, 676 (1985)).

> To prevail on his *Brady* claim, [Petitioner] need not show that he "more likely than not" would have been acquitted had the new evidence been admitted. *Smith v. Cain*, 565 U.S. 73, —— – ——, 132 S.Ct. 627, 629–631, 181 L.Ed.2d 571 (2012) (internal quotation marks and brackets omitted).  He must show only that the new evidence is sufficient to "undermine confidence" in the verdict.  *Ibid*.

*Wearry v. Cain*, 136 S. Ct. 1002, 1006 (2016).

> 2.  Application

The trial court stated on review of Petitioner's claim that it was "hard-pressed to find a circumstance where evidence of [the complainant's] arrest itself would be admissible."  *See People v. Wynn*, No. 09-24999-FC, Op. and Order, at 2 (Genesee Cty. Cir. Ct. Dec. 30, 2015).  Because the evidence in question may not have been admissible, Petitioner arguably has failed to satisfy the "materiality" prong of a *Brady* claim.  *See Wood v. Bartholonew,* 516 U.S. 1, 6 (1995) (*per curiam* opinion concluding that the evidence allegedly suppressed (the results of a polygraph examination of a witness) was not "evidence" at all because it was inadmissible under state law); *but see Barton v. Warden, Southern Ohio Corr. Facility*, 786 F.3d 450, 465 (6th Cir. 2015) (stating that "inadmissible material might nonetheless be considered 'material under *Brady* if it would

"lead directly" to admissible evidence' ") (quoting *Wogenstahl v. Mitchell*, 668 F.3d 307, 325 n. 3 (6th Cir.2012) (quoting *Sawyer v. Hofbauer*, 299 F.3d 605, 614 (6th Cir. 2002)).

Even if evidence of the complainant's arrest were admissible as impeachment evidence, the complainant's testimony regarding the charges against Petitioner was corroborated in part by her sister, her friend, police officers, and a gas station attendant. Furthermore, Petitioner testified that the complainant lied about things and that she would choose her sisters over him. 1/20/10 Trial Tr. at 40, 43, ECF No. 9-14, PageID. 926. The jury convicted Petitioner despite his testimony and his other attacks on her credibility, and it is unlikely that the result of the proceeding would have been different had the complainant's arrest been disclosed to him and revealed at his trial.

Evidence of the complainant's arrest days before the incident for which Petitioner was on trial does not undermine the Court's confidence in the verdict. Therefore, the evidence was not material, and the state trial court reasonably concluded that the outcome of the proceedings would not have been different had the evidence been disclosed to the defense. Petitioner is not entitled to relief on his *Brady* claim.

E.  Trial Counsel

Petitioner's fifth claim alleges that his trial attorney's representation of him fell below an objective standard of reasonableness. Petitioner also alleges that the culmination of trial counsel's errors and omissions undermines confidence in the outcome of his trial and prejudiced him. Respondent argues that this claim is procedurally defaulted because Petitioner failed to raise his ineffectiveness claim on direct appeal, and the state trial court relied on Petitioner's omission to deny post-conviction relief.

In the habeas context, a procedural default is "a critical failure to comply with state procedural law." *Trest v. Cain*, 522 U.S. 87, 89 (1997). Pursuant to the related doctrine, a federal court generally will not review the merits of a state prisoner's claims if a state court declined to hear the claims because the prisoner failed to abide by a state procedural rule. *Martinez v. Ryan*, 566 U.S. 1, 9 (2012).

A procedural default ordinarily is not a jurisdictional matter, however, *Johnson v. Lee*, 136 S. Ct. 1802, 1806 (2016) (quoting *Trest*, 522 U.S. at 89), and a court may bypass a procedural-default question if the claim is easily resolvable against the habeas petitioner. *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997). Petitioner's claim about trial counsel does not warrant habeas relief for the reasons stated below. Accordingly, the Court excuses the alleged procedural error and "cut[s] to the merits," as a procedural-default analysis would only complicate this case. *Thomas v. Meko*, 915 F.3d 1071, 1074 (6th Cir. 2019) (citing *Storey v. Vasbinder*, 657 F.3d 372, 380 (6th Cir. 2011)), *cert. denied*, 139 S. Ct. 2726 (2019).

### 1. Clearly Established Federal Law

The Sixth Amendment to the United States Constitution guarantees the defendant in a criminal case the right "to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This "right to counsel is the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970).

To establish a violation of the Sixth Amendment right to effective assistance of counsel, a defendant must establish that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). An attorney's performance is deficient if "counsel's representation

fell below an objective standard of reasonableness." *Id.* at 688. The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689.

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. The defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

The state trial court cited *Strickland* in its decision on Petitioner's claim, and it opined that Petitioner was not denied effective assistance of trial counsel. Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is difficult. *Richter*, 562 U.S. at 105. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Id.* (internal and end citations omitted).

2. Application

a. Failure to Investigate, Obtain Medical Records, and Call a Witness

Petitioner's first claim about trial counsel is that the attorney failed to investigate Petitioner's medical history, obtain his medical records, and produce his physician to show why he was taking certain medications such as Methadone and refusing to take other medications. Petitioner also contends that his medical history could have been used to disprove the charges against him, because his history of injuries sustained in a

shooting in 2005 made it implausible, if not impossible, to imprison and assault the complainant.

As previously explained, Petitioner himself testified about why he took Methadone and did not take the other medications prescribed for him. *See* 1/20/10 Trial Tr. at 44-48, ECF No. 9-14, PageID. 927-28. He also testified about being "kind of crippled." *Id.* at 24, PageID. 922. He explained that he had forty screws and pins in his right arm, that he could not fully straighten his arm, and that he had a rod, screws, and pins in his leg. *Id.* at 24-25, PageID. 922. Given Petitioner's testimony about his medications and physical condition, there is not a reasonable probability that the result of the trial would have been different had his trial attorney investigated Petitioner's medical history, obtained his medical records, or produced his physician.

The records and the physician may not have helped Petitioner's defense in any event. The trial court reviewed the records on post-conviction review and pointed out that, according to the records, Petitioner had "normal sensation and motor strength" in his right elbow and hand and "no evidence of injuries or contusions" to his left hand after the shooting which caused his injuries. *See People v. Wynn*, No. 09-24999-FC, Op. and Order, at 4 (Genesee Cty. Cir. Ct. Dec. 30, 2015). Petitioner himself admitted to being right-handed and to having hit the complainant in the past. *See* 1/20/10 Trial Tr. at 24, 31, 55, PageID. 922-923, 929. To conclude, defense counsel's alleged failure to obtain Petitioner's medical records and call Petitioner's physician as a witness did not amount to deficient performance, and the omission did not prejudice Petitioner.

b.  Failure to Investigate and Obtain Cell Phone Records

Petitioner alleges next that his attorney should have investigated and obtained cell phone records for himself, for the complainant, and for Sabrina, the complainant's sister. Petitioner asserts that the records would have shown that the complainant made numerous calls to him between January 2009 and April 28, 2009, and that this would have established an ongoing relationship between them.  Petitioner also contends that the cell phone records would have shown that, contrary to the complainant's trial testimony, she did not send a text message to Sabrina on the morning of the crime.

The record indicates that defense counsel did try to obtain phone records, but the company sent the wrong records to him.  *See* 11/06/09 Hr'g Tr. at 10, ECF No. 9-6, PageID. 487.  Whether defense counsel made additional efforts to obtain the cell phone records is unclear.  Petitioner stated at his sentencing that his attorney never acquired the records.  *See* 3/10/10 Trial Tr. at 28, ECF No. 9-17, PageID. 1013.  It is possible that the records were not available, because the prosecutor offered to try to obtain the records, *see* 11/06/09 Hr'g Tr. at 11, ECF No. 9-6, PageID. 488, and there is no indication in the record that he was successful in acquiring the records.

Even if that the records could have been obtained and would have shown that the complainant made calls to Petitioner in the months before the alleged crimes, this would not necessarily has established that the two of them were still romantically involved or that the relationship was a good one.  The overwhelming testimony at trial established that the complainant did not want to be with Petitioner and did not consent to having sex with Petitioner on the day in question.  In the state trial court's words,

> [t]here was evidence [that the complainant] had obtained a Personal
> Protection Order from Defendant at some point and that she told a gas

26

station clerk she was being kidnapped that morning. Officer Petrich testified [that] he had been called out to [the complainant's] house several times a month in reference to trouble with Defendant. Witnesses testified [that the complainant] ran out of Defendant's apartment with a scared look on her face, claiming she was held against her will and raped.

*People v. Wynn*, No. 09-24999-FC, at 5 (Genesee Cty. Cir. Ct. Dec. 30, 2015) (footnotes omitted).

In addition, the registered nurse who examined the complainant after the alleged rape testified that the complainant said she had been threatened, coerced, and restrained. *See* 1/12/10 Trial Tr. at 11, ECF No. 9-11, PageID. 732. The complainant also was tearful and anxious during the medical examination. *Id.* at 13, 45, PageID. 732, 740. For all these reasons, a list of any cell-phone calls that the complainant made to Petitioner in the months before the alleged crimes would not have made a difference in the trial.

Petitioner, nevertheless, contends that the cell phone records would have shown that, contrary to the complainant's trial testimony (1/7/10 Trial Tr. at 15-16, ECF No. 9-9, PageID. 608, and 1/8/10 Trial Tr. at 45, ECF No. 9-10, PageID. 686), she did not send a text message to her sister Sabrina on the morning of the crime. This is mere speculation. A few prosecution witnesses, in fact, supported the complainant's testimony that she *did* send a message to Sabrina. Sabrina, for example, testified that the complainant sent her a brief text message which read: "Sabrina, Edward." *See* 1/8/10 Trial Tr. at 70-71, 99-101, ECF No. 9-10, PageID. 692-693, 700. Sabrina's testimony, in turn, was corroborated by Sergeant John Joseph's testimony and her boyfriend Tyrone Reed's testimony.

Tyrone testified that Sabrina woke him up on the night in question because she had received a partial text message from the complainant. According to Tyrone, the

message stated that Petitioner had the complainant. 1/12/10 Trial Tr. at 118-119, ECF No. 9-11, PageID. 758 - 759. The matter was serious enough that Tyrone skipped work that morning to help Sabrina find the complainant. *Id.* at 120, PageID. 759.

Sergeant Joseph subsequently encountered Sabrina at Petitioner's apartment, and he thought that Sabrina had a cell phone in her hand at the time. He also thought that there had been contact between the complainant and Sabrina before he arrived at the apartment. 1/6/10 Trial Tr. at 89-90, ECF No. 9-8, PageID. 576.

To conclude, there is not a reasonable probability that the cell phone records would have helped Petitioner. Therefore, trial counsel's failure to acquire the records did not amount to deficient performance, and the allegedly deficient performance did not prejudice Petitioner's defense.

### c. Failure to Call Exculpatory Defense Witnesses

Petitioner's final claim about trial counsel is that counsel failed to call witnesses who would have contradicted the testimony of the complainant, her sisters, and Leslie Logan. One of the alleged witnesses was Vernadine Alexander who avers in an affidavit that, if sworn as a witness, she can testify that she observed Petitioner, the complainant, and Leslie Logan socializing with each other at the Street-Rider Motorcycle Club on April 28, 2009, and that she saw the three of them leave the club together without incident. Pet. for Writ of Habeas Corpus, Ex. E, ECF No. 1-1, PageID. 113-15.

Although the complainant and Leslie Logan testified at trial that Petitioner elbowed Ms. Logan in the eye at the club, the result of the trial would not have been different if Ms. Alexander had testified consistently with her affidavit, because the socializing that she

claimed to see occurred before the crimes in question. Therefore, defense counsel was not ineffective for failing to call Ms. Alexander as a witness.

The other witness that Petitioner claims his attorney should have called was Ludaniel Walker, Jr. Mr. Walker states in an affidavit signed on August 15, 2013, that:

> • he is a general contractor, that he has known Petitioner for more than thirty years, and that he has employed Petitioner as a construction clean-up person;
>
> • from 2008 through the spring of 2009, he picked up Petitioner on East Baltimore Boulevard on many occasions;
>
> • during the spring months of 2009, his company began work on Industrial Street, which he believed was an investment property owned by Petitioner and the complainant;
>
> • during that period Petitioner indicated to him that he was afraid that the complainant's sister and other family members were trying to get him in trouble so that he and the complainant would no longer have a relationship; and
>
> • he advised Petitioner very strongly to stay away from those people, but Petitioner's concern was for his infant son, whom he would not be able to see.

Pet. for Writ of Habeas Corpus, Ex. F, ECF No. 1-1, PageID. 116-118.

The critical information in Mr. Walker's affidavit is the statement that Petitioner thought the complainant's family was trying to get him in trouble. Mr. Walker, however, was not a witness to the crimes or to Petitioner's conduct immediately before the crimes.

Furthermore, there was other evidence that the complainant's family did not like or trust Petitioner. *See, e.g.,* 1/8/10 Trial Tr. at 70, ECF No. 9-10, PageID. 692 (one sister's testimony that she knew the complainant was in trouble as soon as she saw the complainant's text message indicating that the complainant was with Petitioner);1/13/10

Trial Tr. at 183-184, 187, ECF No. 9-12, PageID. 831-32 (another sister's testimony that she could not stand Petitioner and that she hated him with a passion).

Petitioner himself testified that the complainant's sisters would blow things out of proportion and report him to the police on numerous occasions. *See* 1/20/10 Trial Tr. at 36, 40, 42-43 ECF No. 9-14, PageID. 925-926. Petitioner also testified that there was a period during which the complainant had tried to keep him from seeing the complainant's baby, whom he thought was his son, and that she later started to secretly "hook up" with him because she did not want her family to know. *See id.*, at 19, 36-39, PageID. 920, 925.

Given this testimony about the bad relationship between Petitioner and the complainant's family, there is not a reasonable probability that Mr. Walker's testimony would have made a difference in Petitioner's trial. The state trial court, moreover, reasonably concluded that defense counsel was not ineffective for failing to call either Ms. Alexander or Mr. Walker as witnesses. To his credit, defense counsel did elicit inconsistencies in the testimony of prosecution witnesses throughout the trial.

### 3. Conclusion

Defense counsel's alleged shortcomings did not amount to deficient performance, and any deficiency did not prejudice the defense. Further, the state trial court reasonably concluded that trial counsel's performance was not deficient under *Strickland*. Given the double deference due to a claim of ineffective assistance of counsel, Petitioner is not entitled to relief on his claim.

F.  Appellate Counsel

In his sixth and final claim, Petitioner alleges that his attorney on direct appeal deprived him of effective assistance and a full and fair appeal by omitting his fourth and fifth claims.  Petitioner contends that claim four (the *Brady* claim) and claim five (ineffective assistance of trial counsel) were significant, obvious, and stronger than the issues that counsel did raise on direct appeal. The state trial court found no merit in this claim and specifically stated that it was not persuaded by Petitioner's claim about appellate counsel.

The proper standard for evaluating a claim about appellate counsel is the standard enunciated in *Strickland.  Smith v. Robbins*, 528 U.S. 259, 285 (2000).  To prevail on a claim about appellate counsel, the defendant must demonstrate (1) that his appellate attorney acted unreasonably in failing to discover and raise non-frivolous issues on appeal and (2) there is a reasonable probability the defendant would have prevailed on appeal if his attorney had raised the issues.  *Id.* (citing *Strickland*, 466 U.S. at 687-91, 694).

Petitioner's fourth and fifth claims lack merit for the reasons given above in the discussion on those claims.  "[B]y definition, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit."  *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001).  Petitioner, therefore, is not entitled to relief on his claim about appellate counsel.

## IV.  Conclusion

The state courts reasonably adjudicated and rejected Petitioner's claims.  Their decisions were not contrary to, or unreasonable applications of, Supreme Court precedent. Their decisions also were not so lacking in justification that there was an error

beyond any possibility for fairminded disagreement. The Court, therefore, denies the petition for writ of habeas corpus.

## V. Denial of a Certificate of Appealability

"[A] prisoner seeking postconviction relief under 28 U.S.C. § 2254 has no automatic right to appeal a district court's denial or dismissal of the petition. Instead, [the] petitioner must first seek and obtain a [certificate of appealability.]" *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327.

Reasonable jurists would not debate the Court's assessment of Petitioner's claims, nor conclude that the issues deserve encouragement to proceed further. Accordingly, the Court denies a certificate of appealability. The Court nevertheless grants Petitioner permission to proceed *in forma pauperis* on appeal, because an appeal from the Court's decision could be taken in good faith. 28 U.S.C. § 1915(a)(3).

Dated:  November 5, 2019                    s/Sean F. Cox
                                            Sean F. Cox
                                            U. S. District Judge